# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS C. NELSON AND SONS, INC., ) | 1:04cv5577 REC DLB |
| ) | |
| Plaintiff, ) | ORDER REGARDING DISCOVERY DISPUTES |
| v. ) | (Documents 61 and 68) |
| COUNTY OF FRESNO, ) | |
| Defendant. ) | |

On September 9, 2005, non-party Harris Construction Co. ("Harris") filed a motion for protective order. On September 14, 2005, Plaintiff Lewis C. Nelson and Sons, Inc., ("Plaintiff") filed a motion to compel compliance with a subpoena issued to non-party Clark Construction Co. ("Clark"). The motions were heard on October 7, 2005, before the Honorable Dennis L. Beck, United States Magistrate Judge. Alexander Bannon appeared on behalf of Plaintiff and William Littlewood appeared on behalf of Defendant County of Fresno ("Defendant"). Nancy Shaw Holt appeared on behalf of Harris and Steven McGee appeared on behalf of Clark.

## **BACKGROUND**

Plaintiff sues Defendant pursuant to 42 U.S.C. § 1983, alleging violations of equal protection and due process based on Defendant's rejection of Plaintiff's bids and awarding of public contracts to the next lowest bidder.

On September 9, 2005, non-party Harris filed the instant motion for protective order and requests that the Court quash Plaintiff's subpoena, which requests deposition testimony from Harris and related documents. Harris is the contractor who was awarded the contract at issue- the construction of Defendant's Juvenile Justice System, a project which is still ongoing. Plaintiff and Harris filed their joint statement on October 4, 2005.

On September 14, 2005, Plaintiff filed a motion to compel non-party Clark's deposition testimony and document production responsive to Plaintiff's subpoena. On October 4, 2005, Plaintiff's attorney Alexander Bannon submitted a declaration in which he explained that although he exchanged a draft joint statement with Clark's counsel, he was not able to obtain a final joint statement from counsel prior to the filing deadline. Mr. Bannon attaches a copy of the draft joint statement.[1]

**DISCUSSION**

A.  Plaintiff's Motion to Compel

    1.  Discovery at Issue

Plaintiff served Clark with a subpoena requesting deposition testimony from the person most qualified to testify about the "performance of the contract" between Harris and Defendant relating to the Juvenile Justice system. The subpoena also requests production of the following documents relating to the contract: all job files, all cost reports, all bid estimates, all change orders, all applications for progress payments, all progress payments, all change order requests, all change orders executed, all outstanding claims, all documents regarding any claims which are outstanding but not paid, and any requests for payments which have not been made.

    2.  Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides:

> **1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or

---

[1] Mr. Bannon states that he did not change his text or the text written by Mr. McGee, Clark's counsel. Mr. Bannon reformatted the document and Mr. McGee has not had an opportunity to review these changes. Mr. McGee appeared at the hearing and did not set forth any objections to the draft joint statement.

2

> other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).

Fed.R.Civ.Proc. 26(b)(1).

    3.    Analysis

*Job Cost Reports*

Plaintiff argues that it needs Clark's job cost reports to prove damages, because, according to Plaintiff, it can compare Clark's job costs with the bid costs and ultimately compare both documents to its bid costs to determine what Plaintiff's profits would have been.

Clark contends that the job cost reports will divulge confidential, proprietary information. In response to the Court's request for more information, James McLamb, vice president of Clark Construction Group-California, LP, provided a declaration explaining the nature of the job cost reports. Mr. McLamb indicates that Clark was able to print out a job cost report that reflected job costs incurred to date. This report was approximately five pages and did not include proprietary information. Mr. McLamb indicated that the cost to produce this report was nominal. Declaration of James McLamb, ¶¶ 3, 4.

Accordingly, as it appears that this report will provide Plaintiff with the information needed (actual costs) and that it can be produced with nominal cost and without divulging proprietary information, the Court GRANTS Plaintiff's motion to compel and orders Clark to produce this report as described in Mr. McLamb's declaration.

*Bid Estimates*

Plaintiff again argues that it needs Clark's bid estimates to prove damages, because it can compare Clark's bid estimates with the actual job costs and ultimately compare both documents to its bid estimate to determine what Plaintiff's profits would have been.

There are two problems with this request. The first is a simple relevancy issue. Plaintiff's planned use for Clark's bid estimates is based on an illogical assumption. Plaintiff assumes that its bid estimate is sufficiently similar to Clark's bid estimate so as to allow Plaintiff to look at the actual costs of the project and determine what its profits would have been. Yet Plaintiff underestimates the highly individualized nature of the bid estimates. The quality, character and specifics of a bid estimate are inherently tied to the quality and experience of the general contractor and it is incorrect to assume that the internal workings of one contractor would mirror that of another. In other words, it is impossible to extrapolate profits by examining the bid estimate of the general contractor who was awarded the contract based on nothing more than the incorrect assumption that Plaintiff's bid estimate will be similar.

Second, the bid estimate are highly proprietary documents. Indeed, Plaintiff has recognized this by offering to enter into an expert eyes-only protective order. If the documents were relevant, this issue might warrant more analysis. However, given that the bid estimate are not relevant to Plaintiff's damages, the Court will not further analyze the issue except to rule that the documents are admittedly highly proprietary and not proper targets of discovery. Plaintiff's motion to compel Clark's bid estimates is therefore DENIED.

> *Applications for Progress Payments, All Progress Payments Made, Change Order Requests, All Change Orders Executed, All Outstanding Claims, All Notices of Potential Claims, Any Requests for Payments Which Have Not Been Made*

To the extent that these documents discuss the actual costs of the project, they are relevant insofar as they assist Plaintiff in calculating lost profits. There is no indication that the documents contain proprietary information and in fact, many of the requested documents may be public record. However, while Clark may be in possession of these documents, these documents are also in the possession of Defendant. Rather than subject Clark to the burden and expense of production, Plaintiff should obtain these documents from Defendant. See eg., Dart Indus. Co., Inc., v. Westwood Chem. Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980) (holding that where discovery is sought from a non-party, a protective order will more readily issue). Plaintiff's motion to compel discovery of this category of documents is DENIED.

4

B.  <u>Harris' Motion for Protective Order</u>

   1. Discovery At Issue

Plaintiff served a subpoena on Harris on or about July 18, 2005. The subpoena requested deposition testimony from the person most qualified to testify about the "performance of the contract" between Harris and the Defendant relating to the Juvenile Justice system and production of the following documents relating to the contract: all job files, all cost reports, all bid estimates, all change orders, all applications for progress payments, all progress payments, all change order requests, all change orders executed, all outstanding claims, all documents regarding any claims which are outstanding but not paid, and any requests for payments which have not been made.

On July 28, 2005, Plaintiff sent a letter modifying the request to include bid estimates, job cost reports, payment records and change order documents (change order requests, change orders and pending claims).

   2. Legal Standard

A party faced with a discovery request may seek relief pursuant to Federal Rule of Civil Procedure 26(c), which provides that a protective order may issue, upon a showing of good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Such a protective order may issue to protect trade secrets or other confidential research, development, or commercial information. Fed. R. Civ. Proc. 26(c)(7).

   3. Analysis

*Job Cost Reports*

Plaintiff again requests the job cost reports in an attempt to prove the profits it would have made. Harris submitted the declaration Timothy J. Marsh, President of Harris, in response to the Court's request for more information. Mr. Marsh explains that Harris' cost tracking system is unique in the industry and by interpolation of information contained in the cost reports, Harris' highly proprietary information and confidential pricing strategy could be discovered. Mr.

5

1 Marsh also indicates that it does not give job cost reports to clients, but instead provides them
2 with a Schedule of Values, which reflects the actual costs of the job as it progresses.  Declaration
3 of Timothy J. Marsh, ¶¶ 1-4.  Mr. Marsh attaches the Schedule of Values for the project at issue,
4 through October 13, 2005.

Accordingly, as it appears that the Schedule of Values will provide Plaintiff with the information needed (actual costs) and the job cost reports may result in discovery of proprietary information, Harris' request for a protective order regarding the job cost reports is GRANTED.

*Bid Estimates*

For the reasons discussed above, Harris' request for a protective order is GRANTED.

*Change Order Requests, Change Orders and Pending Claims*

As discussed above, these documents are available from Defendant and Plaintiff should pursue production therefrom.  Harris' request for a protective order is therefore GRANTED.


IT IS SO ORDERED.

Dated:  **October 19, 2005**               **/s/ Dennis L. Beck**
3b142a                                      UNITED STATES MAGISTRATE JUDGE