IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS C. NELSON AND SONS, INC., | CASE NO. CV F 04-5577 LJO DLB |
| Plaintiff, | **DECISION ON DEFENDANT'S SUMMARY JUDGMENT MOTION** |
| vs. | (Doc. 103.) |
| COUNTY OF FRESNO, | |
| Defendants. | |

## INTRODUCTION

Defendant County of Fresno ("County") seeks summary judgment on plaintiff Lewis C. Nelson and Sons, Inc.'s ("Nelson's") 42 U.S.C. § 1983 ("section 1983") claims that the County denied Nelson equal protection and procedural due process when the County denied Nelson's bids for building projects. Nelson contends that material facts are disputed to preclude summary judgment. This Court considered the County's summary judgment motion on the record[1] and VACATES the May 16, 2007 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS the County summary judgment.

---

[1] This Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, and other papers filed by the parties. Omission of reference to an argument, document, or paper is not to be construed to the effect that this Court did not consider the argument, document, or paper. This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## Denial Of Nelson's Bids

### *Juvenile Justice Center Project*

Nelson is a California corporation and a duly licensed building contractor. On May 20, 2003, the County advertised for bids to construct phase one of the Fresno Juvenile Justice Center Project ("center project"). Nelson, one of several bidders, submitted the lowest bid of $31,680,000. Harris Construction's $32,126,770 bid was second lowest.

The County took the position that Nelson's bid did not describe the location of a proposed subcontractor and that Nelson failed to provide further information requested by specifications within 24 hours following the bid deadline. The County points to California Public Contract Code section 4104 which requires the prime contractor to provide in the bid "the name and the location of the place of business of each subcontractor who will perform work or labor or render service to the prime contractor in or about the construction of the work or improvement." Nelson contends that its omission was incidental and arose in the rush to submit its bid timely.[2]

At a July 29, 2003 public hearing, the County found that Nelson's bid was non-responsive. The center project was awarded to Harris Construction. The County waived Harris Construction's failure to check a box on the bid form in that such failure did not violate a statute on subcontractor listing law.

### *Juvenile Justice Campus Project*

On January 28, 2004, Nelson, Clark Construction Group, Inc. ("Clark Construction") and others submitted bids to the County to construct the Juvenile Justice Campus ("campus project"). Clark Construction's $71,456,000 bid was lowest, and Nelson's was second lowest. On February 4, 2004, Nelson protested award of the campus project to Clark Construction and contended that Clark Construction failed to comply with California Public Contract Code section 4104 and the County's policy of compliance with subcontract listing requirements. More specifically, Nelson complained that Clark Construction's bid misidentified two of its subcontractors': (1) locations (Fresno as opposed to Sanger and Fowler); and (2) names (Ro's Painting and Berg Electric as opposed to Ro's Precision

---

[2] As the County notes, Nelson cites no evidence to support that Nelson's rush to submit a timely bid resulted in the omission.

Painting and Bergelectric Corp.). Nelson further protested that Berg Electric's location was misidentified.

On March 2, 2004, County staff recommended to the County Board of Supervisors to find that: (1) Clark Construction was the lowest responsible bidder; (2) Clark Construction's bid substantially complied with bid requirements; and (3) the Clark Construction bid's purported errors were insubstantial, immaterial and waived. Nelson attended a March 2, 2004 hearing before the Board of Supervisors and was provided an opportunity to be heard to contest the award to Clark Construction. The Board of Supervisors rejected Nelson's protest.

The County accepted Clark Construction's bid to award Clark Construction the campus project. The County contends that the award to Clark construction was consistent with: (1) the County's policy and/or practice to waive at the Board of Supervisors' discretion "non-statutory immaterial deviations or errors in bids submitted on public works projects;" and (2) the County's stated policy of non-waiver of "bidder's omission of a required element of the subcontractor listing information expressly mandated by the subcontractor listing law." Nelson takes the position that as to Clark Construction's bid, the County waived defects which County Counsel considered unwaiveable as to Nelson's center project bid.

**Nelson's Claims**

On April 16, 2004, Nelson filed this action and proceeds on its first amended complaint to allege section 1983 claims of violation of equal protection and procedural due process. Nelson's (first) cause of action for violation of equal protection alleges:

> Nelson was denied equal protection and due process of law by the County's illegal circumvention of the competitive bidding process in California, as characterized by its arbitrary and unlawful dual standards in its rejection of Nelson's bids but acceptance of other low bids by applying one set of rules to Nelson and a different set of rules to other contractors, all under color of state law.

The first cause of action further alleges that the County denied Nelson equal protection and due process of law "as part of a County policy to refuse to contract with contractors who exercise their constitutional right to petition their government for redress."

Nelson's (second) cause of action for violation of procedural due process alleges that had the County enforced the same rule as it did when Nelson was the center project's low bidder, Nelson would have been awarded the campus project. The second cause of action further alleges that had the County

3

1  not enforced its claimed rule, Nelson would have been awarded the center project as lowest bidder. The
2  second cause of action concludes that the County "constructively debarred Nelson from contracting with
3  the County" and "violated Nelson's procedural due process rights by constructively debarring Nelson
4  without a hearing."

5  Nelson seeks damages for lost profits, lost overhead costs and costs to bid on the center and
6  campus projects.

7  The County seeks summary judgment on grounds of: (1) absence of a County policy, custom or
8  practice to cause deprivation of a cognizable constitutional right; (2) the County had rational bases to
9  award the contracts for the center and campus projects; (3) Nelson lacks evidence that the County's
10 conduct was impermissibly motivated; (4) Nelson lacks a cognizable life, liberty or property interest to
11 obtain a public works project with the County; and (5) Nelson was not debarred to do business with the
12 County on public works projects.

## DISCUSSION

### Summary Judgment Standards

15 F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment
16 in the party's favor upon all or any part thereof." Summary judgment is appropriate when there exists
17 no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.
18 F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,
19 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).
20 The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see
21 whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348;
22 *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

23 On summary judgment, a court must decide whether there is a "genuine issue as to any material
24 fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v.*
25 *Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398
26 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct.
27 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).
28 The evidence of the party opposing summary judgment is to be believed and all reasonable inferences

that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence

necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

As discussed below, Nelson fails to produce sufficient evidence to create a genuine issue of material fact as to its claims.

### Section 1983

Nelson pursues his claims under section 1983, which provides a cause of action for victims of constitutional violations committed under color of law. Section 1983 imposes liability upon "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." A section 1983 plaintiff must establish that: (1) the complained of conduct was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a cognizable constitutional right. *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir. 1987); *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

### *Monell* Liability

Nelson alleges its section 1983 claims against the County, a public entity. A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018.

Nonetheless, "[l]ocal governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2036. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.

1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

A single local government action may suffice for a section 1983 claim:

> The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.
>
> With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body-whether or not that body had taken similar action in the past or intended to do so in the future-because even a single decision by such a body unquestionably constitutes an act of official government policy.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986) (footnote omitted).

The County contends that despite Nelson's allegations of County policies or customs to violate constitutional rights, "no evidence exists" of such a policy or custom to hold the County liable under section 1983. Nelson responds that the County misunderstands *Monell* liability in that the County's refusal to award Nelson the center and campus projects constitutes an official policy to invoke a section 1983 claim.

Nelson, as it notes, does not sue the County for County employee actions. Nelson sues the County for failure to award Nelson construction contracts. Such action amounts to an official policy despite the absence of similar past or future County action. The County does not escape Nelson's section 1983 claims based on absence of evidence of a policy or custom.

**Equal Protection Claim**

Nelson claims the County's handling of the contracts for the center and campus projects denied

Nelson equal protection. The Equal Protection Clause ensures that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). An equal protection plaintiff must establish that (1) compared with others similarly situated, the plaintiff was selectively treated; and (2) such selective treatment was based on impermissible considerations, such as the intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure. *City of Cleburne*, 473 U.S. at 439, 105 S.Ct. 3249. "Where an equal protection claim is based on 'selective enforcement of valid laws,' a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for 'an impermissible motive.'"

### *Rational Basis*

The County contends that Nelson's (first) equal protection cause of action is subject to rational basis review absent Nelson's assertion of a fundamental right or suspect classification and that the County had rational bases for its award of contracts for the center and campus projects. "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 2332 (1992).

Nelson's first cause of action alleges Nelson "was deprived of obtaining a profitable contract by the County's enforcement of this policy." The County argues that Nelson's expectancy of a County contract does not "constitute a cognizable fundamental right requiring a more searching review of COUNTY's rejection of Plaintiff's non-responsive bid." The County further argues that the rational basis standard of review applies given that Nelson "cannot establish it is a member of a suspect class."

Nelson responds that the "County retaliated against it for exercising its rights to petition the government for redress of grievances and for bringing, in the past, lawsuits against the County." Nelson argues that it has "a constitutional right to petition its government for redress." Nelson relies on *Bd. of County Comm'rs v. Umbebr*, 518 U.S. 668, 116 S.Ct. 2342 (1996), where the U.S. Supreme Court addressed a trash hauling contractor's section 1983 claims that county commissioners terminated the contractor's contract to retaliate for the contractor's criticism of the county and board of commissioners. The U.S. Supreme Court held that for such independent contractor to prevail, he "must show that the

termination of his contract was motivated by his speech on a matter of public concern." *Umbebr*, 518 U.S. at 685, 116 S.Ct. 2352. Nelson also points to law review commentary and California decisions that the right to petition the government for redress of grievances is well settled.

There appears to be no dispute that Nelson has a right to petition for redress of grievances. The focus is whether Nelson raises a genuine issue of material fact as to its exercise of such right. It does not. There is no concrete evidence of Nelson's litigation before or after its bids were denied and its supposed effects. Nelson raises no factual issue that the members of the County's Board of Supervisors knew of Nelson's litigiousness and acted on such knowledge. Likewise, there is no evidence of Nelson's attempts to petition for redress of grievances arising out of such litigation. Moreover, Nelson offers nothing to the effect that the County's action was motivated by Nelson's speech on a public concern. Nelson attempts to invoke a constitutional right but fails to substantiate the effects of exercising it. Despite its claims, Nelson raises no genuine issue of material fact that the County intended to inhibit or punish Nelson's right to petition to redress grievances.

### *Legitimate Public Purpose*

The County contends its rejection of Nelson's bids "is rationally related to a legitimate public purpose." Nelson contends that the evidence reveals the County's discriminatory intent.

"[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642 (1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2100-2101, 124 L.Ed.2d 211 (1993)). Thus, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. *Heller*, 509 U.S. at 319-320, 113 S.Ct. 2642. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Heller*, 509 U.S. at 319-320, 113 S.Ct. 2642. A legislative body that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1,15, 112 S.Ct. 2326, 2334 (1992). Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications*, 508 U.S. at 313, 113 S.Ct. at 2101.

Moreover, a governmental unit "has no obligation to produce evidence to sustain the rationality of a . . . classification." *Heller*, 509 U.S. at 320, 113 S.Ct. at 2643. The "burden is on the one attacking the legislative [conduct] to negative every conceivable basis which might support it." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 1006 (1973).

The County contends that its rejection of Nelson's bid on the center project was rationally related to the legitimate government interest of strict adherence to the California Public Contract Code.

California Public Contract Code section 4101 articulates Legislative findings:

> The Legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils.

The California Supreme Court has recognized that "strict adherence with bidding requirements is applied 'even where it is certain there was in fact no corruption or adverse effect upon the bidding process, and deviations would save the [public] entity money.'" *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal.4th 161, 176, 36 Cal.Rptr.2d 521, 529 (1994) (quoting *Konica Business Machines U.S.A., Inc. v. Regents of University of California*, 206 Cal.App.3d 449, 456, 253 Cal.Rptr. 591 (1988)). In *Domar Electric*, 9Cal.4th at 175-176, 16 Cal.Rptr.2d at 529, the California Supreme Court observed that a local government board's rejection of a bid "due to the absence of required good faith effort documentation is consistent with the general rule that bidding requirements must be strictly adhered to in order to avoid the potential abuse in the competitive bidding process."

The County argues that rejection of Nelson's non-responsive center project bid is rationally related to maintain bidding consistency to promote a long-term goal to lower contract prices. The County points to July 29, 2003 hearing comments of Susan Anderson, who sits on the County Board of Supervisors:

> [R]eally, it is inviting on a short term basis, a case-by-case basis, to waive a requirement like [listing the address of subcontractors] because it is to our financial advantage, but I think in the long run, it is more important to have a very reliable consistent process and in the long run we save money . . .

Relying on employment discrimination cases, the applicability of which it fails to explain, Nelson argues that it need show only "minimal evidence" of the County's discriminatory intent. For such

evidence, Nelson points to County staffers' deposition testimony that:

    1.    "[W]e were concerned that we were going to get a contractor as a low bidder, responsible low bidder, that would be very litigious";

    2.    Nelson's claim filing was discussed prior to the campus project bid; and

    3.    Staffers had heard that Nelson filed a lot of claims on jobs and was litigious.[3]

Nelson argues that the County "failed to give Nelson equal protection" because the County inconsistently enforced its bid rules. Nelson concludes that based on the County's handling of the center and campus project bids, a trier of fact "may" determine "the County's desire to avoid contracting with Nelson because of Nelson's exercise of its constitutionally protected right to free speech . . . was a substantial or motivating factor in the County's decision to refuse to contract with Nelson."

    Nelson fails to negate the legitimate governmental purpose for the County's bid handling. Nelson's reliance on stray deposition comments fails to defeat application of the rational basis test, to reveal a pretext for the County's actions, and to negate bases for the County's denial of Nelson's bids in favor of Harris Construction and Clark Construction. The County articulated its bidding management purpose to promote long-term lower contract prices. Nelson fails meaningfully to dispute such purpose given the County's unwillingness to waive information mandated by the subcontractor listing law. Nelson fails to demonstrate the County's inconsistent application of statutorily required subcontractor information. Nelson offers nothing to merit second guessing the County's rationale at issue here. Nelson fails to raise genuine issues of material fact to defeat summary judgment for the County on Nelson's (first) equal protection cause of action.

### Nelson's Procedural Due Process (Constructive Debarment) Claim

    Nelson's (second) procedural due process cause of action alleges that the County's "manipulating the bid awards" constructively debarred Nelson to contract with the County.

    The County contends that it had no policy or procedure to constructively debar Nelson and has made no statements that the County will not do business with or accept bids from Nelson or award

---

[3] In its reply papers, the County points to a staffer's testimony that he was unaware of discussions that Nelson was an unwanted contractor or less preferable to others. The County correctly characterizes the deposition testimony relied upon by Nelson to demonstrate concern to reduce litigation through plans and specifications "with very few holes."

contracts to Nelson. The County points to the declarations of its Department of Public Works and Planning Director Richard Brogan and Assistant Director Andrew Richter that:

1. The County did not have a policy or practice by which Nelson was secretly or publicly debarred to bid on County projects;

2. Nelson was not actually or de facto debarred by a County policy or practice; and

3. The same policies and practices were applicable to all contractors, including Nelson, for submitting bids on County projects.

The County further argues that its rejection of Nelson's bid for the center project is a "single episode" not arising to de facto debarment. *See Redondo-Borges v. United States Department of Housing and Urban Development*, 421 F.3d 1, 9 (1st Cir. 2005) ("A single incident is insufficient to establish a pattern or practice of exclusion (and, thus, to establish even a de facto debarment)." The County points to the "high standard" to establish de facto debarment:

> To succeed, [plaintiff] must demonstrate a "systematic effort by the procuring agency to reject all of the bidder's contract bids." *Stapp Towing, Inc. v. United States*, 34 Fed.Cl. 300, 312 (1995). Two options exist to establish a de facto debarment claim: 1) by an agency's statement that it will not award the contractor future contracts; or 2) by an agency's conduct demonstrating that it will not award the contractor future contracts. *CRC Marine Serv., Inc. v. United States*, 41 Fed.Cl. 66, 84 (1998).

*TLT Constr. Corp. v. United States*, 50 Fed.Cl. 212, 215-216 (Fed. Cl. 2001).

Nelson responds that its states a constructive debarment claim since it "submitted two bids for two different contracts." Nelson contends that it need not "incur additional time and expense in submitting even more bids to the County when the County made it obvious that it would not contract with Nelson." Nelson quotes the following from *Transco Sec., Inc. of Ohio v. Freeman*, 639 F.2d 318, 321 (6th Cir. 1981):

> One who has been dealing with the government on an ongoing basis may not be blacklisted, whether by suspension or debarment, without being afforded procedural safeguards including notice of the charges, an opportunity to rebut those charges, and, under most circumstances, a hearing.

As with its (first) equal protection cause of action, Nelson fails to raise a genuine issue of material fact to defeat the County's summary judgment motion as to Nelson's (second) constructive debarment cause of action. Nelson raises no factual issue of the County's future dealing with Nelson.

Nelson raises no issue regarding due process issues to address its rejected bids. The evidence reveals that the County heard Nelson's challenges to rejection of its bids. An absence of meaningful supportive evidence defeats Nelson's constructive debarment cause of action. Nelson's evidence does not meet the high standard for de facto debarment.

**Substantive Due Process**

Nelson's (second) procedural due process cause of action alleges that it would have been awarded the center and campus projects contracts if not for the County's conduct. The County contends that Nelson's due process cause of action fails in that Nelson "cannot establish the deprivation of a cognizable property interest falling within the penumbra of rights protected by the Due Process Clause." The County points to *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

The County further points to *Associated Builders and Contractors, Inc. v. City of Seward*, 966 F.2d 492, 499 (9th Cir. 1992), *overruled on other grounds*, *Chamber of Commerce of U.S. v. Lockyer*, 463 F.3d 1076 (9th Cir. 2006), where the Ninth Circuit Court of Appeals observed that "wishful bidders" on a municipal construction project lack a "constitutionally protected property interest" in the project.

On the County's motion to dismiss Nelson's original complaint, Senior U.S. District Judge Robert Coyle dismissed Nelson's substantive due process claim but permitted Nelson to amend its complaint to allege a deprivation of liberty claim. Nelson concedes that its operative first amended complaint "does not plead a cause of action for violation of substantive due process." Based on Judge Coyle's rulings and Nelson's concession, Nelson lacks a substantive due process claim.

**Document Production**

Nelson notes that the County, based on privilege assertions, failed to produce documents between staff and County Counsel "relating to whether or not the County should award Nelson a contract and whether there was any 'policy', as the County now claims exists." Nelson argues that the County's failure to produce documents warrants "an admission of the want of merit in the asserted defense" or at least, "provides the basis for the denial of this motion."

The County responds that on September 5, 2005, it produced its privilege log to identify withheld documents based on attorney-client privilege. The County notes Nelson's lack of challenge to its privilege assertions. The County explains that it does not rely on an advice of counsel defense and that its summary judgment motion is not supported by withheld information.

Nelson fails to explain adequately how the County's document production affects its opposition to summary judgment. There is nothing to suggest that Nelson challenged the County's assertion of privilege to withheld documents. To withstand summary judgment, Nelson cannot rely on the County's assertion of privilege and Nelson's failure to challenge such assertion. Nelson makes not even the faintest showing that withheld information is relevant to the County's summary judgment motion.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS defendant County of Fresno summary judgment;
2. VACATES all pending dates, including the June 7, 2007 settlement conference, August 23, 2007 pretrial conference and October 15, 2007 trial; and
3. DIRECTS this Court's clerk to close this action and to enter judgment in favor of defendant County of Fresno and against plaintiff Lewis C. Nelson and Sons, Inc.

IT IS SO ORDERED.

**Dated:   May 10, 2007**                  **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE